[No. 26079. Department One. August 27, 1936.]

J. V. CALDWELL, *Appellant*, v. JOHN A. WILLIAMS, *Respondent.*[1]

*Myers & Myers,* for appellant.

*DuPuis & Ferguson,* for respondent.

[1]Reported in 60 P. (2d) 28.

502

GERAGHTY, J.—In this action, the plaintiff sued the defendant Williams, doing business as Western Mills Agency, for services. In paragraph III of his complaint, he alleged:

"That at the special instance and request of the defendant, the plaintiff was employed continuously by the defendant between July 1, 1934, and August 1, 1935, and during said time acted as general manager for the defendant in the conduct of said paper brokerage business; that the services performed by the plaintiff during the aforesaid time were and are of the reasonable and agreed value of $150 per month, or $1,950, no part of which has been paid except the sum of $300; and that there is now due and unpaid from the defendant to the plaintiff the sum of $1,650."

In his answer, the defendant, after admissions and denials, affirmatively alleged:

"That on or about October 1, 1934, the plaintiff, J. V. Caldwell, was employed by the defendant for part time work in the nature of bookkeeping and stenographic work. That at the time of the commencement of the employment it was expressly agreed between the parties hereto that the salary of the plaintiff would be a nominal one and while no amount was agreed upon it was expressly agreed that the salary would be within reason for part time employment and what the business would bear. That the amount of salary to be drawn was left to the discretion of the plaintiff. That in accordance with the above mentioned agreement the plaintiff drew for each and every month from October 1, 1934, to January 1, 1935 the sum of $20 for said services and from January 1, 1935, to August 1, 1935 the sum of $30. That plaintiff has drawn his agreed and reasonable salary for his part time employment."

Plaintiff, filing a reply, denied the affirmative allegations of the answer and alleged:

"That shortly before the commencement of this action, the defendant for the first time repudiated said

partnership, and denied the existence of any partnership, but agreed with plaintiff that he would pay plaintiff whatever was right and reasonable for plaintiff's services during the time he was working in the office of the Western Mills Agency.''

When the case came on for trial to the court without a jury, the defendant objected to the introduction of any testimony by the plaintiff and moved for judgment on the pleadings, on the ground that the facts set up in the reply were a departure from the allegations of the complaint. A colloquy then took place between the court and counsel:

''MR. MYERS: We are suing on *quantum meruit*. We are setting that up to show that we accepted that repudiation of partnership and he repudiated it, but in lieu of that he agreed to pay a reasonable compensation and we are suing for a reasonable compensation. THE COURT: All right, if that is your interpretation of the pleadings and your allegation, I will overrule the motion. . . . I will deny the motion, but will hold the plaintiff to any remedy under this last paragraph of the reply; in other words, it will be held to strictly *quantum meruit* remedy based on the agreement after the partnership termination. . . . MR. MYERS: My understanding of the court's ruling is that the only evidence to be allowed will be evidence of reasonable value of his services after proof of a contract for reasonable value after the termination of the partnership, is that correct? MR. FERGUSON [for defendant]: Are you going to restrict his remedy or his proof? THE COURT: It is very difficult in advance to make as sweeping and broad statement as that. I am going to hold him to that theory, that his remedy as he suggested in open court is *quantum meruit* based upon the partnership and substitution of *quantum meruit*. MR. FERGUSON: Based on a subsequent promise to pay. THE COURT: Yes.''

The trial proceeded on this view of the issues.

At the close of plaintiff's case, the defendant challenged the legal sufficiency of the evidence, and, after

argument, the court announced that he would sustain the challenge and enter judgment of dismissal, as there was a complete failure on the part of plaintiff to prove facts sufficient to constitute a cause of action. After overruling a motion for new trial, a judgment of dismissal with prejudice was entered. The plaintiff appeals.

As we have seen, the case went to trial on the theory of a partnership repudiated by the respondent, with a new agreement to pay what was right and reasonable for appellant's services during the time he was working in the office of the Western Mills Agency. In other words, that there was a novation by substitution of a contract to pay for the reasonable value of the services. While this was the issue, the court allowed the appellant a wide latitude in making his case. Quoting from his testimony:

"From July to October, 1934, I was working there making a survey to ascertain whether to go in or not and trying to find out something about the business. . . . I worked about an hour and one-half a day and sometimes longer. We opened a bank account about November 1, 1934, in the name of the Western Mills Agency. I do not recall just how much money we started with. The money came from the checks we had received from customers.

"Prior to November 1, Mr. Williams had carried the money in his pocket, I suppose. At that time Mr. Williams gave me authority to write the checks on the company and he signed such an authority at the bank. We borrowed money from our bank which was the Bank of California whenever we needed it, probably once a month. I made out the notes. I never signed them as I was not authorized to do so. I was only authorized to sign the checks. I never signed a note while I was with the company.

"I did assume obligations, however, by being a partner. I discussed my partnership liability with Mr. Williams on October 1, 1934. Mr. Williams was

driving his personal car on company business and was not carrying insurance and I knew I would be jointly responsible with him and I suggested that he carry insurance to protect me. As he refused to take out such insurance, I refused to sign partnership papers, and I, therefore, refused to enter into a written contract as a partner, and we did not have one drawn up. I did tell him we were partners however. Both on October 1, 1934, and January 1, 1935. On January 1, 1935, the question of money arose again and he wanted me to put in $1,000.

"I told him it was too much money. He said if we can't get together on a written contract we will carry on the way we are until we get to something. I told him that would be satisfactory with me. I never paid him the money, $1,000. I knew that if it came down to brass tacks I was liable for partnership obligations without a written contract, but I did not want it to come out as general information.

"If we had entered into a written contract it would be on file and be open to the public. Unless a creditor made a thorough investigation he would not find that I was a partner. . . .

"I took a Christmas present in December, 1934, of $25. . . . During the month of January, 1935, I withdrew $25. . . . During the month of February I withdrew $35. During the month of March, I withdrew $30. During the month of April, I withdrew $40. During the first thirty days of May, 1935, I withdrew $35, and on the last day I made an additional withdrawal of $25. During the month of June, I withdrew $10. In July, 1935, the last month I was with the company, I withdrew $85.81. . . .

"On or about the first of November, 1934, I made a memo of accounts payable. These accounts payable were for amounts owed on that date and are a correct copy of all accounts payable at that time. There is no mention made of my claim for salary, although all the other creditors' claims are mentioned."

This testimony falls short of establishing the partnership or any agreement for employment, either

at an agreed salary or for the reasonable value of services. From July 1 to October 1, appellant admittedly had no status either as partner or employee, but was in the office, as he said, to make a survey to determine whether or not to go into business with respondent. At the end of that trial period, while apparently satisfied that the business could be made a success, yet he hesitated to take any decisive step in the definite formation of a partnership. He hesitated to put in any money; he did not sign the obligations at the bank; and he was afraid of possible liability resulting from the operation of the respondent's automobile or other liabilities that might accrue. He did not want to sign any papers because his connection might become known. He was disposed to go in, but hesitated to assume the burdens or responsibilities of a partner.

The only way to characterize his status after October 1st is that it remained what it was during the initial three months' period; that he was still undecided and further testing the possibility of success. The testimony indicates there was one difference: After November, he drew small monthly sums, as he testified, so that he would not be out of pocket. The agency had but little business, he himself was out of employment, and he spent but a short time each day at the agency office.

On the issue of the alleged subsequent agreement in lieu of the partnership, the testimony of the appellant is equally unsatisfactory. In support of his contention in this respect, he testified:

"About that time Mr. Williams offered to give me some shares of stock. He said, I will give you so many and I will take so many. I saw that he did not consider me as a partner. Then I terminated all agreements that I had with the Western Mills Agency. Mr. Williams said that no partnership ever existed and he would pay me a reasonable sum for services rendered.

This was during a conversation which extended from August 1 to August 3, 1935. This statement was made while we were downstairs having lunch alone. He said $700 was a reasonable sum. I didn't agree to take it. We could not agree on a sum for a settlement so we decided to consult our attorneys and we could never reach an agreement. . . .

"I made him a counter-offer for his interest in the business. I offered him $1,000 cash for his interest in the business. I also told him I would consider the $700 offer if he would be willing to split up the rights we were using to represent the mills and give me the exclusive rights in Oregon. Mr. Williams then withdrew his offer of $700 and said that if I wanted to take the rights, $700 would be too much."

The most that can be said for this testimony is that the respondent made an offer to appellant in compromise of his claim. The offer was rejected by appellant and subsequently withdrawn by respondent. We are in accord with the trial court's conclusion that the appellant failed to prove a cause of action upon contract, *quantum meruit*, or partnership.

The appellant contends, in any event, the judgment should have been one for nonsuit and not with prejudice. We are of the opinion that the form of judgment was proper. This is not a case where the appellant failed to sustain his case by reason of the absence of some evidence that it would be possible to supply in another action. All that he had to offer in support of his cause of action was before the court, and the respondent was entitled to a judgment that would be *res judicata* and finally settle the controversy.

The judgment is affirmed.

MILLARD, C. J., TOLMAN, STEINERT, and MITCHELL, JJ., concur.